**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2052
_____

TRANSCONTINENTAL GAS PIPE LINE CO., LLC,
Appellant

v.

PENNSYLVANIA ENVIRONMENTAL HEARING
BOARD; STEVEN C. BECKMAN; BERNARD A.
LABUSKES, JR.; MICHELLE A. COLEMAN;
SARAH J. CLARK; CITIZENS FOR
PENNSYLVANIA'S FUTURE; DELAWARE
RIVERKEEPER NETWORK; MAYA K. VAN
ROSSUM
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-23-cv-00463)
District Judge:  Honorable Christopher C. Conner
_____

Argued:  October 19, 2023

Before:  CHAGARES, *Chief Judge*, PHIPPS and
CHUNG, *Circuit Judges*.

(Filed: July 8, 2024)
_____

Andrew T. Bockis
SAUL EWING
2 N Second Street
Penn National Insurance Plaza, 7th Floor
Harrisburg, PA 17101

Patrick F. Nugent
Sean T. O'Neill
John F. Stoviak
SAUL EWING
1500 Market Street
Centre Square West, 38th Floor
Philadelphia, PA 19102

Elizabeth U. Witmer          **[ARGUED]**
SAUL EWING
1200 Liberty Ridge Drive
Suite 200
Wayne, PA 19087

    *Counsel for Transcontinental Gas Pipe Line Co., LLC*

Emma H. Bast
Jessica R. O'Neill
PENNFUTURE
1429 Walnut Street
Suite 701
Philadelphia, PA 19102

Kacy C. Manahan          **[ARGUED]**
DELAWARE RIVERKEEPER NETWORK
925 Canal Street
Suite 3701
Bristol, PA 19007

    *Counsel for Citizens for Pennsylvania's Future*

Emma H. Bast
PENNFUTURE
1429 Walnut Street
Suite 701
Philadelphia, PA 19102

Kacy C. Manahan          [ARGUED]
DELAWARE RIVERKEEPER NETWORK
925 Canal Street
Suite 3701
Bristol, PA 19007

    *Counsel for Delaware Riverkeeper Network*

Kacy C. Manahan          [ARGUED]
DELAWARE RIVERKEEPER NETWORK
925 Canal Street
Suite 3701
Bristol, PA 19007

    *Counsel for Maya K. van Rossum*

Margaret O. Murphy       [ARGUED]
PENNSYLVANIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION
400 Market Street
P.O. Box 8469
Harrisburg, PA 17105

Curtis C. Sullivan
PENNSYLVANIA DEPARTMENT OF
ENVIRONMENTAL PROTECTION
909 Elmerton Avenue
3rd Floor
Harrisburg, PA 17110

    *Counsel for Intervenor Pennsylvania*
    *Department of Environmental Protection*

—————————————

OPINION OF THE COURT
—————————————

**PHIPPS**, *Circuit Judge*.

To construct, extend, or abandon an interstate natural gas pipeline requires permits from both federal and state agencies. In this case, a pipeline company obtained all the permits needed to abandon and replace part of its pipeline and to expand its pipeline through new construction in Pennsylvania. The company then began those endeavors. But within the time permitted by state law, environmental advocates administratively appealed the Pennsylvania state agency's issuance of three of the required permits to another state agency, as allowed by state law.

With those permits in jeopardy and the construction project underway, the pipeline company initiated this action in the District Court for declaratory and injunctive relief. It also moved to preliminarily enjoin the administrative appeal. In support of its motion, the pipeline company argued that the Natural Gas Act preempts the state law allowing an administrative appeal expressly and also impliedly through field and obstacle preemption. The state agency that issued the permits intervened and supported the pipeline company's motion. The District Court rejected the preemption arguments and denied the pipeline company's motion.

In this timely appeal of that decision, the pipeline company challenges that ruling. On *de novo* review, because none of the theories of preemption advanced by the pipeline company or the state agency apply here, we have affirmed the District Court's denial of the preliminary-injunction motion for the reasons below.

4

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Transcontinental Gas Pipe Line Company, LLC, commonly referred to as 'Transco,' is a natural gas company subject to the Natural Gas Act. *See* 15 U.S.C. § 717a(6) (defining the term 'natural-gas company'). Transco operates natural gas transportation facilities spanning from offshore in the Gulf of Mexico through several states, including Pennsylvania and New Jersey, to the New York City metropolitan area. In 2021, Transco sought to abandon some of its outdated pipeline facilities and to expand others in Pennsylvania and New Jersey. But under the Natural Gas Act, before Transco could commence that project, it needed a Certificate of Public Convenience and Necessity from the Federal Energy Regulatory Commission. *See id.* § 717f(b)–(c).

On March 26, 2021, Transco applied for such a certificate. After notice and an opportunity for public comment, FERC issued the certificate through an order dated January 11, 2023. *See Transcontinental Gas Pipe Line Co.*, 182 FERC ¶ 61,006 (2023). But FERC placed numerous conditions on that certificate – as it may legally do. *See generally* 15 U.S.C. § 717f(e) (granting FERC the power to issue certificates and to attach conditions to them when required by public convenience and necessity).

One of those conditions required Transco to provide documentation to FERC that it had "received all applicable authorizations required under federal law (or evidence of waiver thereof)" before commencing the project. *Transcontinental*, 182 FERC ¶ 61,006, at App. B, P 10. And a federal law, the Clean Water Act, requires a Water Quality Certification from any state in which the federally licensed activity may result in the origination of a discharge of pollutants into the navigable waters of the United States. *See* 33 U.S.C. § 1341(a)(1). On March 31, 2021, within a week of applying for a Certificate of Public Convenience and Necessity

5

from FERC, Transco applied to the Pennsylvania Department of Environmental Protection for a Water Quality Certification for the pipeline project in Pennsylvania.

Under its Clean Water Act powers, PADEP, as the agency is commonly abbreviated, can impose conditions on a Water Quality Certification. *See id.* § 1341(d). And when PADEP issued the Water Quality Certification for the project a year later, on March 30, 2022, it did so subject to the condition that Transco receive three additional permits from PADEP: an Erosion and Sediment Control Permit, *see* 25 Pa. Code § 102, and two Water Obstruction and Encroachment Permits, *see id.* § 105. Thus, those additional permits, referred to herein as the 'Sub-Permits,' operated as sub-conditions on the Certificate of Public Convenience and Necessity for the project. *See* 15 U.S.C. § 717b(d)(3) (allowing state regulation of interstate natural gas pipelines under the Clean Water Act); *Transcontinental*, 182 FERC ¶ 61,006, at App. B, P 13 ("All conditions attached to the water quality certificate issued by the Pennsylvania Department of Environmental Protection . . . constitute mandatory conditions of the Certificate Order.").

Transco applied for the Sub-Permits, and on February 3, 2023, PADEP issued them. About a month after receiving the Sub-Permits, Transco began its pipeline project.

A Pennsylvania statute, however, allows any person adversely affected by a PADEP permitting decision to administratively appeal that ruling to a separate state agency, the Environmental Hearing Board, commonly abbreviated as the 'EHB.' *See* 35 Pa. Stat. Ann. § 7514(c). Three environmental advocates – Citizens for Pennsylvania's Future; the Delaware Riverkeeper Network; and the Delaware Riverkeeper, Maya K. van Rossum – claimed that the pipeline project would degrade certain streams, tributaries, and wetlands in violation of Pennsylvania law in six respects, and they timely filed a joint administrative appeal with the EHB challenging PADEP's issuance of the Sub-Permits. *See* 35 Pa.

6

Stat. Ann. § 7514(g) (allowing the EHB to make rules for proceedings); 25 Pa. Code § 1021.52(a)(2)(i)–(ii) (requiring aggrieved persons to file an appeal with the EHB within thirty days from the earlier of publication in *Pennsylvania Bulletin* or actual notice of PADEP's action). That administrative appeal to the EHB did not automatically stay or enjoin the Sub-Permits, nor did it otherwise prevent Transco from undertaking construction on its pipeline expansion project. *See* 35 Pa. Stat. Ann. § 7514(d)(1) ("No appeal shall act as an automatic supersedeas."); *see also Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot.* (*Riverkeeper III*), 903 F.3d 65, 72 (3d Cir. 2018) ("[A]n appeal to the EHB does not prevent PADEP's decision from taking immediate legal effect.").

Nonetheless, while that administrative appeal was pending before the EHB, Transco initiated this action in the District Court against the environmental advocates and the members of the EHB to enjoin those proceedings. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015) (articulating the long-held legal principle "that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law"). Transco also sought a judgment declaring that, under the Natural Gas Act, this Court was the sole forum to dispute PADEP's issuance of the Sub-Permits. *See* 28 U.S.C. § 2201 (creating the declaratory judgment as a remedy and permitting a court to grant such relief in an "actual controversy within its jurisdiction").

Eight days later, Transco moved for a preliminary injunction to prevent the administrative appeal to the EHB from going forward. *See* Fed. R. Civ. P. 65(a). The three environmental advocates opposed that motion, but the EHB members did not make any filing in response to the motion. PADEP moved to intervene, and after that motion was granted, it filed a brief in support of Transco's position.

7

In exercising federal-question jurisdiction over the case,[1] the District Court denied Transco's motion. It determined that Transco did not establish either a likelihood of success on the merits or irreparable harm and therefore did not qualify for preliminary injunctive relief.

Through a timely notice of appeal, Transco invoked this Court's appellate jurisdiction to dispute the denial of its motion for a preliminary injunction. *See* 28 U.S.C. § 1292(a)(1); Fed. R. App. P. 4(a)(1)(A). After expedited briefing and oral argument, along with a notice from the EHB members of their election not to participate in the appeal, this Court entered a judgment affirming the District Court's order denying preliminary injunctive relief. This opinion provides the reasons for that judgment.

## II. DISCUSSION

A preliminary injunction is an "extraordinary and drastic" subspecies of injunctive relief that is issued before resolution on the merits and that applies during the pendency of litigation. *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane *Federal Practice and Procedure* § 2948, at 129 (2d ed. 1995)); *see also Santana Prods., Inc. v. Compression Polymers, Inc.*, 8 F.3d 152, 154 (3d Cir. 1993) (explaining that 'injunctive relief' refers to the use of a court's equitable powers to issue "[o]rders that are directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than a temporary fashion"

---

[1] *See* 28 U.S.C. § 1331; *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.").

(cleaned up)).  Like all equitable relief, a preliminary injunction is "never awarded as of right," but rather it involves the exercise of "equitable discretion." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24, 32 (2008).  This Court recognizes four considerations that bear on the exercise of that discretion:

1.  A reasonable probability of success on the merits of the claim for which injunctive relief is sought;

2.  An irreparable harm in the absence of preliminary injunctive relief;

3.  A balancing of the equities associated with the possibilities of harms to other interested persons resulting from the grant or denial of injunctive relief; and

4.  An assessment of the public interest.

*See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017); *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *see also Winter*, 555 U.S. at 20; *Kim v. Hanlon*, 99 F.4th 140, 154–55 (3d Cir. 2024).

The first two considerations – a reasonable probability of ultimate success and some harm that cannot be remedied in either law or equity following resolution on the merits – operate both as essential elements and as factors that guide the exercise of equitable discretion.  They are elements because the failure of the moving party to make either of those threshold showings is fatal to the issuance of a preliminary injunction. *See Reilly*, 858 F.3d at 179 (referring to the first two considerations as "gateway factors"); *In re Arthur Treacher's*

9

*Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("Unless both a reasonable probability of eventual success and irreparable harm are demonstrated, preliminary injunctive relief is not to be granted." (citation and quotation omitted)). They are factors because once the moving party makes the two threshold showings, then the relative weights of those considerations are evaluated along with the other two factors – the balance of equities and the public interest. *See Reilly*, 858 F.3d at 179 ("If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."); *see also Winter*, 555 U.S. at 32 ("[T]he balance of equities and consideration of the public interest . . . are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent."); *Siemens USA Holdings Inc. v. Geisenberger*, 17 F.4th 393, 408 (3d Cir. 2021).

The dual function of the first two considerations has practical consequences as well. A near certain likelihood of success on the merits or a particularly severe irreparable harm will influence the exercise of equitable discretion more than minimal qualifying showings for those considerations. Conversely, if there is an "insuperable" barrier to the plaintiff's ability to succeed on the merits or an absence of an irreparable harm, then an analysis of the remaining considerations is unnecessary. *Munaf*, 553 U.S. at 691 (quotation omitted); *see also Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 103 (3d Cir. 2022) (explaining that the movant must satisfy the threshold prerequisites). Even more, an insuperable barrier to a plaintiff's success on the merits allows the reviewing court, in the exercise of its equitable discretion, to deny relief on the underlying claim. *See Munaf*, 553 U.S. at 691 ("Review of a preliminary injunction 'is not confined to the act of granting the injunctio[n], but extends . . . to determining whether there is any insuperable objection, in . . . jurisdiction or merits, to the maintenance of [the] bill'" (first and fourth alteration in

original) (quoting *City & County of Denver v. N.Y. Tr. Co.*, 229 U.S. 123, 136 (1913))); *see also id.* (explaining that in reviewing the grant or denial of a preliminary injunction, an appellate court's extension of review to the merits is "most appropriate if the injunction rests on a question of law and it is plain that the plaintiff cannot prevail").

Here, Transco's motion and its entire case are premised on preemption. It asserts that the Pennsylvania statute allowing an administrative appeal to the EHB, *see* 35 Pa. Stat. Ann. § 7514(c), is displaced by the Natural Gas Act through express preemption and two forms of implied preemption: field preemption and obstacle preemption. *See generally Arizona v. United States*, 567 U.S. 387, 398–400 (2012) (explaining that each form of preemption is rooted in the Supremacy Clause, U.S. Const. art. VI, cl. 2). As a matter of law, however, none of those methods of preemption apply here, and so the District Court correctly denied Transco's motion for a preliminary injunction.

### A. The Natural Gas Act Does Not Expressly Preempt Administrative Appeals to the EHB.

Express preemption requires an explicit statement of federal law that announces and defines the scope of displaced state regulation. *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203 (1983) ("It is well-established that within Constitutional limits Congress may preempt state authority by so stating in express terms."); *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) ("Express preemption applies where Congress, through a statute's express language, declares its intent to displace state law."). The explicit statutory conferral of exclusive jurisdiction to a federal court over a particular subject matter is a form of express preemption because it withdraws any concurrent jurisdiction that state courts may have over that same subject matter. *See Tafflin v. Levitt*, 493 U.S. 455, 459 (1990) ("Th[e] deeply rooted presumption in favor of concurrent state court jurisdiction is, of course, rebutted if

11

Congress affirmatively ousts the state courts of jurisdiction over a particular federal claim.").

Relevant here, a clause in the Natural Gas Act grants federal appellate courts "original and exclusive jurisdiction over any civil action" that challenges state administrative agency action taken "pursuant to Federal law to issue, condition, or deny any permit . . . required under Federal law." 15 U.S.C. § 717r(d)(1). Transco argues that when a PADEP permitting decision involves an interstate natural gas pipeline, the original-and-exclusive-jurisdiction clause preempts the operation of the Pennsylvania statute that allows for administrative appeals to the EHB, *see* 35 Pa. Stat. Ann. § 7514(c).

But "the presence of an express preemption provision does not end the inquiry" because courts still must examine "the scope of the preemption provision." *Farina*, 625 F.3d at 118; *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996) (explaining that a court must "identify the domain expressly pre-empted" by federal law (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 (1992))); *Roth v. Norfalco LLC*, 651 F.3d 367, 375 (3d Cir. 2011) (same). And here, the Natural Gas Act's conferral of original and exclusive jurisdiction upon federal appellate courts is limited to "civil action[s]." 15 U.S.C. § 717r(d)(1). Thus, for an administrative appeal to the EHB to fall within the original-and-exclusive-jurisdiction clause, it must be a 'civil action.' *See Township of Bordentown v. FERC*, 903 F.3d 234, 267 (3d Cir. 2018) ("By the plain language of the statute, the conferral of 'original and exclusive jurisdiction' to the federal Courts of Appeals is limited to 'civil action[s] for the review of an order or action of a Federal agency . . . or State administrative agency.'" (quoting 15 U.S.C. § 717r(d)(1))); *see generally CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993) (explaining that the express preemption analysis "focus[es] on the plain wording" of the federal law).

This Court has already considered the meaning of the term 'civil action' as used in the original-and-exclusive-jurisdiction clause. As explained in *Township of Bordentown v. Federal Energy Regulatory Commission*, that term refers only to civil court proceedings – not to matters before administrative agencies:

> [A] "civil action" refers only to civil cases brought in courts of law or equity and does not refer to hearings or other quasi-judicial proceedings before administrative agencies.

903 F.3d at 267.

But under the structure of Pennsylvania state government, the EHB is not a court. By the terms of its organic statute, the EHB is a "quasi-judicial *agency*," 35 Pa. Stat. Ann. § 7513(a) (emphasis added), consisting of members who are "full-time *administrative law* judges," *id.* § 7513(b) (emphasis added). And while the EHB "has the power and duty to hold hearings and issue adjudications," *id.* § 7514(a), it is not included as one of the nine courts comprising Pennsylvania's Unified Judicial System, *see* 42 Pa. Cons. Stat. § 301. Moreover, the Commonwealth Court concluded that, for purposes of Pennsylvania law, "[p]roceedings before the EHB, an administrative agency independent of [PA]DEP, are administrative proceedings, not civil actions." *Cole v. Pa. Dep't of Env't Prot.*, 257 A.3d 805, 815 (Pa. Commw. Ct. 2021).

For further perspective, there will always be significant similarities between administrative adjudications and court proceedings. *See Bordentown*, 903 F.3d at 267 (explaining the long-standing principle that "administrative hearings, even to the extent that they in some ways mirror an adversarial trial, do not constitute proceedings in courts of law or equity"). Indeed, the EHB and state appellate courts may each affirm, modify, vacate, set aside, or reverse a PADEP permitting decision, and

13

they may each remand the matter to PADEP.[2] But the EHB does not follow the "general rules governing practice, procedure and the conduct" promulgated by the Pennsylvania Supreme Court for use in Pennsylvania courts. Pa. Const. art. V, § 10(c) (granting the Supreme Court of Pennsylvania the power to adopt rules for practice before Pennsylvania courts); 25 Pa. Code §§ 1021.1–.201 (setting rules for proceedings before the EHB). Instead, the EHB's hearing and adjudicative powers are subject to Pennsylvania's Administrative Agency Law, which applies "to all Commonwealth agencies," 2 Pa. Cons. Stat. § 501(a); *see* 35 Pa. Stat. Ann. § 7514(a)–(b). *See generally* 2 Pa. Cons. Stat. § 103(a) (entitling 2 Pa. Cons. Stat. §§ 501–08, 551–55, 561–68, 581–88, 701–04, and 751–54 as the "Administrative Agency Law"). And under Pennsylvania's Administrative Agency Law, the EHB is responsible for developing a record after discovery through a trial-like process. *See id.* §§ 504–06 (providing for record development in administrative agencies); *Leatherwood, Inc. v. Commonwealth, Dep't of Env't Prot.*, 819 A.2d 604, 611 (Pa. Commw. Ct. 2003) ("When an appeal is taken from [PA]DEP to the EHB, the EHB is required to conduct a hearing *de novo* . . . [and] the EHB's duty is to determine if [PA]DEP's action can be sustained or supported by the evidence taken by the EHB.").

---

[2] *Compare Pequea Township v. Herr*, 716 A.2d 678, 686–87 (Pa. Commw. Ct. 1998) (explaining the EHB's authority to uphold, vacate, or modify the actions of PADEP and quoting *Warren Sand & Gravel Co. v. Dep't of Env't Res.*, 341 A.2d 556, 565 (Pa. Commw. Ct. 1975)), *and City of Harrisburg v. Commonwealth, Dep't of Env't Prot.*, 1996 WL 375864, at *49–50 (Pa. EHB June 28, 1996) (remanding matter to PADEP with instructions to issue a Water Quality Certification), *with* 42 Pa. Cons. Stat. § 706 (setting forth the review powers of state appellate courts), *and* 2 Pa. Cons. Stat. § 704 (authorizing judicial review of actions of Commonwealth agencies).

Despite the EHB possessing the powers of an administrative agency, Transco argues that the EHB qualifies as a 'court' so that an administrative appeal to the EHB constitutes a 'civil action.' Transco grounds its position in three attributes of the relevant statutory framework: (i) the EHB's structural independence from PADEP; (ii) the EHB's authority to conduct discovery and to reach its own conclusions on permits; and (iii) the right of an adversely affected person to challenge PADEP permitting decisions directly in this Court without first filing an administrative appeal to the EHB.

To support its assertion that the EHB should be construed as a court because of its structural independence from PADEP, Transco relies on the *Bordentown* decision. That case rejected preemption challenges to the administrative appeal process under New Jersey law for Clean Water Act permitting decisions for interstate natural gas pipelines. *See Bordentown*, 903 F.3d at 267–69. That process involves "internal administrative review" under which the same agency that made the initial decision also resolved the administrative appeal. *Id.* at 268. As Transco reads *Bordentown*, that decision's rejection of the preemption challenges rests on New Jersey's use of an internal administrative review process. And because, unlike New Jersey's administrative process, the EHB and PADEP are separate agencies, Transco argues that the administrative appeals to the external EHB are preempted.

Transco misreads *Bordentown*. That decision's rejection of the preemption challenge was not contingent on New Jersey's internal administrative review process. Rather, after surveying the caselaw and examining the original-and-exclusive-jurisdiction clause, *Bordentown* explained that "[t]he only plausible conclusion to draw from these cases and from the text of the statute itself is that § 717r(d)(1) does not preempt state administrative review of interstate pipeline permitting decisions." *Id.* at 269. So instead of assisting Transco's position, *Bordentown* relied on a broader principle to reject preemption, *viz.*, that administrative appeals of conditions or

15

sub-conditions on Certificates of Public Convenience and Necessity imposed by state agencies are not preempted. *See id.* Applying that principle to Pennsylvania's administrative review process for Clean Water Act permits needed for interstate natural gas pipelines leads to the conclusion that the Natural Gas Act does not preempt administrative appeals to the EHB.

But even if the *Bordentown* holding were entirely contingent on the internal administrative appeal process used in New Jersey, that would not compel preemption in this case. That (incorrect) reading of *Bordentown* can be expressed as the following logical construct: 'if internal administrative appeal, then no preemption.' And Transco wants the inverse of that statement to also be true: 'if no internal administrative appeal, then preemption.' But the inverse of a true conditional statement is not necessarily true. *See* Ruggero J. Aldisert, *Logic for Lawyers* 163 (3d ed. 1997) (explaining that the logical fallacy known as "denying the antecedent of a conditional statement" occurs when the statement "'if P then Q' is taken to imply 'if not P, then not Q'"); *see also* Irving M. Copi & Carl Cohen, *Introduction to Logic* 306, 357 (9th ed. 1994) (explaining the same).[3] So Transco's reading of *Bordentown* does not logically compel the conclusion that the Natural Gas Act preempts an administrative appeal from PADEP to the EHB of a Clean Water Act permitting decision regarding an interstate natural gas pipeline.

Even still, Transco argues that the outcome of this case must be different than in *Bordentown*. Transco points out that, in addition to being an external administrative appellate

---

[3] By way of example, the true statement that 'if a person is in Pennsylvania, then that person is not in New Jersey' has an inverse of 'if a person is not in Pennsylvania, then that person is in New Jersey.' And that inverse is not necessarily true; it may be true, but it requires additional proof and does not follow purely as a matter of logic.

agency, the EHB has the power to develop a record through discovery and a hearing. Those powers, according to Transco, make the EHB a court. But that neglects that the EHB is an appellate body and that the development of a factual record in an appellate court is extremely rare. *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 123 (1969) (explaining that district courts are better positioned to "appraise and weigh the evidence"); *Fassett v. Delta Kappa Epsilon (New York)*, 807 F.2d 1150, 1165 (3d Cir. 1986) ("The only proper function of a court of appeals is to review the decision below on the basis of the record that was before the district court."). Similarly, appellate courts typically do not have the ability to substitute their discretion for that of an administrative agency. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."); *Kwalwasser v. Commonwealth, Dep't of Env't Res.*, 569 A.2d 422, 424 (Pa. Commw. Ct. 1990) (explaining a court should not substitute its discretion for that of an agency in the "absence of fraud, bad faith or a flagrant abuse of discretion" (citations omitted)). By contrast, it is not uncommon on administrative appeal for agencies to have the ability to create a separate record or to substitute their discretion for the initial agency adjudicator. *See United States v. Arthrex, Inc.*, 594 U.S. 1, 20 (2021) ("[I]t certainly is the norm for principal officers to have the capacity to review decisions made by inferior adjudicative officers" (quotation omitted)); *see also* 5 U.S.C. § 557(b) (providing that in an administrative appeal, the agency "has all the powers which it would have in making the initial decision except as it may limit the issues on notice

17

or by rule").[4]  And unlike an appellate court, the EHB has those powers.  *See Pequea Township v. Herr*, 716 A.2d 678, 686–87 (Pa. Commw. Ct. 1998) (explaining that if the EHB finds, based on the record created before the EHB, that PADEP abused its discretion, the EHB may substitute its discretion for that of PADEP).  Thus, contrary to Transco's contention, the EHB's authority to develop a record and substitute its discretion for PADEP's makes it much more like an appellate administrative body than an appellate court.

Finally, Transco argues that because a PADEP licensing decision involving a Water Quality Certification for an interstate natural gas pipeline can be challenged in either this Court directly, *see Riverkeeper III*, 903 F.3d at 74–75, or through an administrative appeal to the EHB, *see* 35 Pa. Stat. Ann. § 7514(c), the EHB must be a court.  But as explained in *Bordentown*, specifically in the context of the original-and-exclusive-jurisdiction clause of the Natural Gas Act, "even though a petitioner might have the right immediately to commence a civil action in this Court, this does not necessarily extinguish his right instead to seek redress via *the available administrative avenues* before filing that civil action." 903 F.3d at 271 n.25 (emphasis added).  So although this Court and the EHB both have appellate review powers over a PADEP decision regarding conditions or sub-conditions for a Certificate of Public Convenience and Necessity, the EHB need not be understood as a court for purposes of the Natural

---

[4] *See also, e.g.*, 17 C.F.R. § 201.452 (permitting the Securities and Exchange Commission to take additional evidence when hearing an administrative appeal); 47 C.F.R. § 1.276(c)(3) (permitting the Federal Communications Commission to do the same); 38 C.F.R. § 20.302 (permitting the Board of Veterans' Appeals to consider new evidence submitted within ninety days following the initial hearing).

18

Gas Act – it can still be an agency undertaking review on administrative appeal.[5]

---

[5] In a footnote, Transco advocates for using this Court's much-maligned test announced in *Baughman v. Bradford Coal Co.*, 592 F.2d 215 (3d Cir. 1979), for construing the meaning of the term 'court' when used in a statute. *See Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1264 (3d Cir. 1994) (questioning *Baughman*'s "functional" approach to determining whether an agency is a 'court'); *Friends of the Earth v. Consol. Rail Corp.*, 768 F.2d 57, 62 (2d Cir. 1985) (declining to adopt the *Baughman* approach and hueing closely to statutory text); *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 795 (5th Cir. 2000) (same); *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1524–25 (9th Cir. 1987) (same). But the relevant scope-defining term in the original-and-exclusive-jurisdiction clause is 'civil action' – not 'court.' *See* 15 U.S.C. § 717r(d)(1). Even though this Court's later interpretation of 'civil action' for purposes of the original-and-exclusive-jurisdiction clause defined 'civil action' as proceedings before a *court*, *see Bordentown*, 903 F.3d at 266–67, the *Baughman* test does not apply because it provided guidance on statutory construction – not the relevance or application of precedent. *See Herr v. U.S. Forest Serv.*, 803 F.3d 809, 819 (6th Cir. 2015) (Sutton, J.) ("[W]e don't read precedents like statutes."). Moreover, this Court has never held a state administrative agency to be a court under the *Baughman* test. *See Baughman*, 592 F.2d at 219 (holding that the EHB *was not a court* for purposes of the prior-enforcement limitation on the citizen-suit provision of the Clean Air Act, 42 U.S.C. § 7604(b)(1)(B)); *see also Sun Buick*, 26 F.3d at 1267 (holding that the Pennsylvania Board of Vehicle Manufacturers, Dealers and Salespersons was not a state court for purposes of the federal removal statute). Accordingly, *Baughman* has neither binding nor persuasive force here.

19

In short, none of the rationales offered by Transco demonstrate that the environmental advocates' administrative appeal to the EHB of PADEP's issuance of the Sub-Permits is expressly preempted by the Natural Gas Act.

### B. An Administrative Appeal to the EHB Is Not Field Preempted.

Transco also relies on field preemption as a basis for enjoining the administrative appeal to the EHB. Under field preemption, federal law renders inoperative all state law in an area – even harmonious state regulatory efforts. *See Oneok, Inc. v. Learjet, Inc*, 575 U.S. 373, 377 (2015); *Arizona*, 567 U.S. at 399. Field preemption may be implied when federal law either occupies a field of regulation "so comprehensively that it has left no room for supplementary state legislation," *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 479 (2018) (quoting *R.J. Reynolds Tobacco Co. v. Durham County*, 479 U.S. 130, 140 (1986)), or "touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Implicit in Congress's authority to define the preempted field is its ability to create express exceptions through anti-preemption clauses that carve out permissible areas of state regulation from an otherwise preempted field. *See Pac. Gas & Elec.*, 461 U.S. at 212 ("[T]he federal government has occupied the entire field of nuclear safety concerns, except the limited powers expressly ceded to the states."); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 492 (1987) ("Although Congress intended to dominate the field of pollution regulation, the saving clause negates the inference that Congress 'left no room' for state causes of action."); *Farina*, 625 F.3d at 121 (recognizing that Congress may through a "savings provision" leave some room for state regulation in an otherwise preempted field).

Transco contends that the Natural Gas Act field preempts state regulation of interstate natural gas pipelines so as to

render inoperative the Pennsylvania statute, 35 Pa. Stat. Ann. § 7514(c), which allows administrative appeals to the EHB. The keystone of its argument is the Supreme Court's decision in *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293 (1988), which held that the Natural Gas Act implicitly preempts the field of interstate natural gas pipeline regulation such that state requirements for the issuance of securities by pipelines have no legal effect. *Id.* at 300, 306–10.

But in analyzing field preemption, a court must "proceed cautiously, finding pre-emption only where detailed examination convinces [it] that a matter falls within the pre-empted field." *Oneok*, 575 U.S. at 385. Here, such a detailed examination begins with recognizing that the field of state regulation preempted by the Natural Gas Act is not impervious to exceptions. *See id.* (emphasizing that the Natural Gas Act "was drawn with meticulous regard for the continued exercise of state power, not to handicap or dilute it in any way." (quoting *Panhandle E. Pipe Line Co. v. Pub. Serv. Comm'n of Ind.*, 332 U.S. 507, 517–18 (1947))). In particular, the Natural Gas Act has an anti-preemption clause that preserves the rights of states granted by three other federal statutes:

> Except as specifically provided in [the Natural Gas Act], nothing in [the Natural Gas Act] affects *the rights of States* under [the Coastal Zone Management Act, the Clean Air Act, or the Clean Water Act].

15 U.S.C. § 717b(d) (emphasis added).

Still, that clause is not an airtight anti-preemption provision because it allows for the Natural Gas Act to limit the scope of state regulation under those three statutes. *See id.* But because any such limitation must be "specifically provided," *id.*, the clause leaves open the possibility of only express preemption with respect to states' rights under those three statutes – and it forecloses any form of implied preemption. *Id.* Thus, the

21

clause expressly carves out permissible state regulation from an otherwise preempted field and prevents any form of implied preemption with respect to those preserved areas of state regulation.

As a result of that anti-*implied*-preemption clause, only an express provision in the Natural Gas Act can preempt state regulation related to interstate natural gas pipelines under the Clean Water Act. Yet, as explained above, the Natural Gas Act does not contain such an express preemption provision to that effect. And without one, the provisions of the Clean Water Act that enable states to issue Water Quality Certifications, *see* 33 U.S.C. § 1341(a)(1), and to impose attendant conditions and sub-conditions on those certifications for interstate natural gas pipelines, *see id.* § 1341(d), are not preempted by the Natural Gas Act.

Transco presses the point, however. It insists that the extent of permitted state regulation under the anti-preemption clause is limited to PADEP's permitting decisions and does not include administrative appeals to a separate state agency, such as the EHB. But the preservation of state regulatory authority under an anti-preemption clause also allows states to "us[e] appropriate tools to exercise that authority." *Chamber of Com. v. Whiting*, 563 U.S. 582, 601 (2011) (Roberts, C.J., plurality opinion). And the Pennsylvania statute authorizing an administrative appeal to the EHB from PADEP permitting decisions under the Clean Water Act, 35 Pa. Stat. Ann. § 7514(c), is reasonably in furtherance of the Clean Water Act powers reserved for states – those of deciding whether to issue a Water Quality Certification and whether to impose conditions and sub-conditions on the certification. Thus, an administrative appeal to the EHB represents the exercise of an appropriate tool to implement the powers reserved to Pennsylvania under the anti-preemption clause of the Clean Water Act, and therefore that administrative appeal process is not subject to field preemption.

22

In sum, through the anti-implied-preemption clause in the Natural Gas Act, if state regulation is permitted under the Clean Water Act, then neither the regulation itself nor appropriate tools to effectuate that regulation are field preempted. Consequently, as a state procedure reasonably in furtherance of the preserved area of state regulation, an administrative appeal to the EHB of PADEP permitting decisions under the Clean Water Act related to interstate natural gas pipelines is not subject to field preemption.

## C. Obstacle Preemption Does Not Bar Administrative Appeals of PADEP Permitting Rulings to the EHB.

Transco and PADEP also argue that an administrative appeal to the EHB poses an obstacle to the full attainment of purposes and objectives of the Natural Gas Act and must therefore be rendered inoperative as an implied conflict with federal law. *See generally Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869, 874 (2000) (explaining that even though an anti-preemption clause may save state law from being expressly preempted, that does not preclude a finding of conflict preemption (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288–89 (1995))); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law.").[6]  Under obstacle preemption, when a state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of a federal

---

[6] Neither Transco nor PADEP argues that a conflict can be implied because of the impossibility of compliance with both federal and state requirements. *Cf. PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618 (2011) (explaining that when it is "impossible for a private party to comply with both state and federal requirements" the state requirements are conflict preempted (quoting *Freightliner*, 514 U.S. at 287)).

law," that rises to the level of a conflict for which preemption may be implied. *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also Geier*, 529 U.S. at 884 (explaining that conflict preemption is a form of implied preemption).

Here, both Transco and PADEP infer from the original-and-exclusive-jurisdiction clause, *see* 15 U.S.C. § 717r(d)(1), that a purpose of the Natural Gas Act is streamlined review in federal appellate court of state permitting decisions under the Clean Water Act required for interstate natural gas pipelines. *See Del. Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot.* (*Riverkeeper I*), 833 F.3d 360, 372 (3d Cir. 2016) (explaining that a purpose of § 717r(d)(1) is to "streamline the review of state decisions taken under federally-delegated authority"). And that purpose, in their view, is impeded by the Pennsylvania statute, 35 Pa. Stat. Ann. § 7514(c), that allows an administrative appeal to the EHB of PADEP permitting decisions under the Clean Water Act related to interstate natural gas pipelines. Their arguments for obstacle preemption do not succeed.

### 1. The Availability of an Administrative Appeal to the EHB Does Not Pose an Obstacle to Judicial Review in This Court.

Through different approaches, Transco and PADEP each assert that EHB dispositions are not directly reviewable in this Court, and as a result, an administrative appeal to the EHB presents an obstacle to streamlined review in federal appellate court. Transco argues that the original-and-exclusive-jurisdiction clause in § 717r(d), through the independent operation of the terms 'issue' and 'pursuant to,' forecloses this Court's ability to review EHB dispositions. PADEP also contends that EHB dispositions are not reviewable in federal court, but it relies on the administrative record provisions in § 717n, which, in its view, modify the original-and-exclusive-

jurisdiction clause to prevent judicial review of final decisions by the EHB. As explained below, neither of those constructions of the Natural Gas Act is correct: a state agency's disposition of an administrative appeal regarding a condition or sub-condition on a Certificate of Public Convenience and Necessity is subject to judicial review in federal appellate court. Thus, Transco and PADEP's un-reviewability concerns are phantoms, and they do not pose an obstacle to streamlined judicial review in this Court.

### a. Purported Un-Reviewability Based on § 717r(d)(1)

Transco bases its un-reviewability assertion on the text of the original-and exclusive-jurisdiction clause. In addition to 'civil action,' several other terms in that clause bound the subject-matter jurisdiction conferred by § 717r(d)(1), including the terms 'issue, condition, or deny,' 'permit, license, concurrence, or approval,' and 'pursuant to Federal law':

> The United States Court of Appeals for the circuit in which a facility subject to section 717b of this title or section 717f of this title is proposed to be constructed, expanded, or operated shall have original and exclusive jurisdiction over any *civil action* for the review of an order or action of a Federal agency (other than the Commission) or State administrative agency acting *pursuant to* Federal law to *issue, condition, or deny* any *permit, license, concurrence, or approval* (hereinafter collectively referred to as "permit") required under Federal law, other than the Coastal Zone Management Act of 1972 . . . .

15 U.S.C. § 717r(d)(1) (emphases added).

For the term, 'issue,' Transco emphasizes that the Natural Gas Act authorizes judicial review of only the agency decisions that "*issue*, condition, or deny any permit, license,

25

concurrence, or approval." *Id.* (emphasis added). From there, it contends that as a matter of state law, the EHB does not *issue* the Sub-Permits, only PADEP does. *Compare, e.g.*, 35 Pa. Stat. Ann. § 691.5(b)(5) (authorizing PADEP to issue permits under the Clean Streams Law), *with id.* § 691.7(a) (authorizing the EHB to review PADEP's issuance of permits under the Clean Streams Law). Thus, according to Transco, once there has been an administrative appeal to the EHB, judicial review in a federal appellate court would be unavailable – in contravention of § 717r(d)(1).

At the outset, Transco's argument is incomplete because it ignores the disjunctive listing of the agency actions subject to judicial review: the statute applies to state agency orders that "issue, condition, *or* deny" permits. 15 U.S.C. § 717r(d)(1) (emphasis added). So, even if Transco is correct that the EHB cannot itself *issue* the challenged Sub-Permits, there would still be the option of judicial review in this Court for EHB decisions that *condition* or *deny* permits. *See Pequea Township*, 716 A.2d at 686–87 (explaining that when the EHB reviews the actions of PADEP it may uphold or vacate an order, or may, if it finds an abuse of discretion "order the issuance of permits with different terms and conditions than those originally imposed by [PADEP]"); *Browning-Ferris Indus., Inc. v. Dep't of Env't Prot.*, 819 A.2d 148, 153 (Pa. Commw. Ct. 2003) (same); *see also Leatherwood*, 819 A.2d at 606 (affirming EHB's revocation of a permit).

But it is not only EHB decisions that condition or deny permits related to interstate natural gas pipelines that may be challenged in this Court. The original-and-exclusive-jurisdiction clause applies to the issuance, conditioning, or denial of "any permit, license, concurrence, or *approval*." 15 U.S.C. § 717r(d)(1) (emphasis added). So if the EHB does not condition or deny a permit, its disposition on administrative appeal will constitute the issuance of an *approval* of PADEP's permitting decision. Thus, under any scenario, a disposition by the EHB on administrative appeal would be within the

original-and-exclusive-jurisdiction clause and would therefore be subject to judicial review in this Court.

As a variation on a theme, Transco contends that the 'pursuant to' phrase also prevents judicial review in federal appellate court of EHB dispositions. By its terms, the original-and-exclusive-jurisdiction clause allows review of the orders of state administrative agencies but only when those agencies act "pursuant to Federal law." *Id.* And Transco argues that the EHB does not act pursuant to federal law when it adjudicates an administrative appeal related to PADEP permits and sub-permits required for a Certificate of Public Convenience and Necessity.

That assertion disregards the field preemptive effect of the Natural Gas Act. Because the Natural Gas Act generally displaces state law in the field of interstate-natural-gas-pipeline regulation, *see Schneidewind*, 485 U.S. at 300, 306–10, any state regulatory action on that subject matter occurs only by virtue of the anti-preemption clause, *see* 15 U.S.C. § 717b(d). Therefore, any such state regulation is pursuant to federal law. *See Riverkeeper I*, 833 F.3d at 372 ("The Natural Gas Act preempts state environmental regulation of interstate natural gas facilities, except for state action taken under those statutes specifically mentioned in the Act: the Coastal Zone Management Act, the Clean Air Act, and the Clean Water Act. In other words, the only state action over interstate natural gas pipeline facilities that could be taken pursuant to federal law is state action taken under those statutes." (footnote omitted)).[7] And, as explained above, an administrative appeal to the EHB

---

[7] *See also Harrow v. Dep't of Def.*, 144 S. Ct. 1178, 1184 (2024) (explaining that "pursuant to" is often used to denote that an action was taken "under" some provision or that the provision "served as the basis" for acting); *Murphy*, 584 U.S. at 468–69 (explaining that where a law authorizes an action, a person acting in accord with that authorization can be said to act 'pursuant to' that law).

is within the scope of the anti-preemption clause. Thus, an EHB disposition of such an administrative appeal would be within the 'pursuant to federal law' requirement and subject to review through a civil action in this Court, leaving no obstacle to that purpose of the Natural Gas Act. *See* 15 U.S.C. § 717r(d)(1); *cf. Riverkeeper I*, 833 F.3d at 371–72 (holding that PADEP permitting decisions for interstate natural gas pipelines are pursuant to federal law).

### b. *Purported Un-Reviewability Based on § 717n*

PADEP's theory of obstacle preemption rests on a different codified provision of the Natural Gas Act, 15 U.S.C. § 717n, which imposes an obligation on FERC to prepare an administrative record for "Federal authorization[s]," as that term is statutorily defined. *Id.* § 717n(a) (defining 'Federal authorization'), (d) (imposing administrative record obligations). PADEP argues that FERC's administrative record obligations under § 717n limit the scope of the original-and-exclusive-jurisdiction clause, so that it allows judicial review of only Federal authorizations. PADEP rounds out its argument by asserting that EHB dispositions do not qualify as Federal authorizations, and therefore they are beyond the reach of the original-and-exclusive-jurisdiction clause.

The problem with PADEP's argument is that it assumes the incompleteness of the original-and-exclusive-jurisdiction clause so that the definition of 'Federal authorization' in § 717n is needed to supply missing meaning. But the clause is not lacking in that respect: it defines a federal appellate court's jurisdiction through terms such as 'civil action,' 'issue, condition, or deny,' 'permit, license, concurrence, or approval,' and 'pursuant to Federal law.' 15 U.S.C. § 717r(d)(1). It does not mention or incorporate by reference the term 'Federal authorization,' which is defined only for purposes of § 717n – not for the entirety of the Natural Gas Act. Thus, there is no ready basis for reading the term 'Federal

28

authorization' as a limitation on the original-and-exclusive-jurisdiction clause.

In sum, the identified provisions of the Natural Gas Act – in particular the terms 'issue' and 'pursuant to' as well as the administrative record requirements in § 717n – do not extinguish the possibility of judicial review in this Court of an EHB ruling regarding a condition or sub-condition for a Certificate of Public Convenience and Necessity. Consequently, those provisions do not justify implying obstacle preemption to preclude administrative appeals to the EHB.

### 2. The Possibility of Multiple Challenges in Different Fora to PADEP Permitting Decisions Under the Clean Water Act for Interstate Natural Gas Pipelines Does Not Impose an Obstacle to the Purposes of the Natural Gas Act.

PADEP also raises a practical concern – multiplicity of suits – that it contends presents an obstacle to the achievement of the purposes and objectives of the Natural Gas Act. PADEP's permitting decisions required for a Certificate of Public Convenience and Necessity may be challenged through two separate mechanisms: an administrative appeal to the EHB, *see* 35 Pa. Stat. Ann. § 7514(c), or a civil action in this Court, *see Riverkeeper III*, 903 F.3d at 74–75. Those separate challenges may be brought by different persons, on different records. *Compare Leatherwood*, 819 A.2d at 611 (requiring the EHB to prepare the administrative record), *with* 15 U.S.C. § 717n(d)(2) (providing that the record be compiled by FERC). And, as PADEP sees it, the burdens of allowing multiple challenges in different fora based on separate administrative records poses an obstacle to the inferred goal of the Natural Gas Act of streamlined litigation in one forum – a federal appellate court.

PADEP's concern is legitimate. But it is not sufficiently grounded in a conflict between federal and state law. By allowing state regulation under the Clean Water Act, *see* 15 U.S.C. § 717b(d), the Natural Gas Act necessarily compromises the streamlined judicial review that would occur if only one agency, such as FERC, had sole control over authorizing interstate natural gas pipeline construction and expansion projects. Thus, when assessing the goals of the Natural Gas Act, the purpose of creating a streamlined process for judicial review of state permitting decisions under the Clean Water Act cannot be viewed as an absolute principle. *See Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) ("But no legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice – and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law." (emphasis omitted)). Instead, the purpose of streamlined review must be balanced against the Natural Gas Act's express preservation of a role for states in the administration of environmental laws. *See* 15 U.S.C. § 717b(d).

Those multiple purposes of the Natural Gas Act hinder the implication of obstacle preemption. When a federal statute has multiple purposes that are in partial tension with one another, that statute should not be construed to impliedly preempt state regulatory efforts in conflict with one of the statute's purposes if that state regulation furthers another of the statute's principal purposes. *See Whiting*, 563 U.S. at 601 (Roberts, C.J., plurality opinion) (explaining that a state law that implements a program that Congress expressly permitted is not in conflict with federal law); *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166–67 (1989) ("The case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law . . . and has nonetheless decided to 'stand by both concepts and to tolerate whatever tension there [is] between them.'" (second alteration

in original) (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 256 (1984))); *Williamson*, 562 U.S. at 335 (rejecting an argument that a stricter state safety standard was conflict preempted since the statute contemplated a "continued meaningful role for state tort law"). And here, the possibility of multiple, separate challenges in different fora on different administrative records is a byproduct of the anti-preemption clause in the Natural Gas Act, which allows states to retain their powers under the Clean Water Act with respect to interstate natural gas pipelines. *See* 15 U.S.C. § 717b(d). Therefore, while a legitimate concern, the prospect of a multiplicity of challenges to a PADEP permitting decision for an interstate natural gas pipeline project is not a basis for implying obstacle preemption. Rather, it is a consequence of the Natural Gas Act's allowance of state involvement in Clean Water Act regulation of interstate natural gas pipelines.

### 3. As a Form of Implied Preemption, Obstacle Preemption Is Foreclosed by the Anti-Implied-Preemption Clause.

Finally, even if Transco and PADEP's concerns otherwise posed an obstacle that could justify conflict preemption, the original-and-exclusive-jurisdiction clause would still prevent implied preemption. As explained above, the Natural Gas Act's anti-preemption clause prevents all forms of implied preemption of state regulation within its scope. And because that clause permits state regulation of interstate natural gas pipelines under the Clean Water Act, no such state regulation may be impliedly preempted. *See* 15 U.S.C. § 717b(d). Consequently, even if an administrative appeal to the EHB of a PADEP permitting decision under the Clean Water Act related to an interstate natural gas pipeline did pose an obstacle to the purposes and objectives of the Natural Gas Act, the anti-implied-preemption clause in § 717b(d) would prevent conflict preemption.

31

### III. CONCLUSION

For the foregoing reasons, Transco and PADEP's preemption arguments fail as a matter of law, and therefore it is not necessary to address the remaining preliminary-injunction considerations to affirm the denial of Transco's motion. *See Munaf*, 553 U.S. at 691.