**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 25-2729

———————

DAVID HICE; JOSEPH MOORE; CHRISTINA BARLOW; individually, and on behalf
of all others similarly situated
Appellants

v.

EQT CORP., a Pennsylvania Corporation; EQT PRODUCTION CO.; BEUSA
HOLDINGS, INC., a Delaware corporation; BEUSA ENERGY, LLC, a Delaware
limited liability company; EVOLUTION WELL SERVICES OPERATING, LLC, a
Delaware limited liability company

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:24-cv-00896)
District Judge:  Honorable W. Scott Hardy

———————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 8, 2025

———————

Before:  KRAUSE, PHIPPS, and CHUNG, *Circuit Judges*

(Filed: March 19, 2026)

———————

OPINION*

———————

---

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Three Pennsylvania residents who rely on well water for their homes initiated this eight-count putative class action against five companies that they associate with the operation of a hydraulically fractured natural gas well for contamination of their well water. Before they sought class certification, they moved for a preliminary injunction to compel one of the companies and its corporate affiliate to provide safe drinking water to all members of the putative class during the pendency of the litigation. Although they requested an evidentiary hearing in connection with that motion, the District Court determined that they did not sufficiently allege irreparable harm and denied their motion without holding a hearing. *See Hice v. EQT Corp.*, 2025 WL 2457219, at *3 (W.D. Pa. Aug. 26, 2025); *see also Erie Indem. Co. v. Stephenson*, 157 F.4th 265, 275 (3d Cir. 2025) (identifying irreparable harm as a prerequisite for a preliminary injunction (citing *Transcon. Gas Pipe Line Co. v. Pa. Env't Hearing Bd.*, 108 F.4th 144, 150 (3d Cir. 2024))). The three residents then filed this interlocutory appeal to challenge the denial of their motion for preliminary injunctive relief. For the reasons below, we will vacate the denial of the motion.

## BACKGROUND

In June 2022, EQT Corporation, a Pittsburgh-based oil and gas company, was operating a natural gas well in Greene County, Pennsylvania, at a site identified as Lumber 13H. At the well, EQT extracted subsurface natural gas through hydraulic fracturing, or 'fracking' for short. Through that extraction method, common in horizontal directional drilled wells in Western Pennsylvania, highly pressurized fracking fluid is injected into the well to open fissures in rock formations and release natural gas for extraction.

2

On June 19, a resident of New Freeport, Pennsylvania, noticed a geyser coming out of the abandoned Fox Hill Well on his property. That well is about 6,500 feet from Lumber 13H, and the resident promptly alerted EQT to that development. EQT investigated the possibility of a 'frac-out,' an event in which fracking fluid escapes the well and potentially enters the groundwater. EQT personnel paused stimulating the Lumber 13H Well, and when they resumed operations, groundwater again splashed out of the Fox Hill Well.

EQT did not provide immediate notice of these developments to the Pennsylvania Department of Environmental Protection, commonly abbreviated as 'DEP.' But the next day, DEP learned of the potential frac-out. It inspected the site and, on June 21, instructed EQT to cease operating Lumber 13H. EQT did so the next day.

Afterward, residents of the area who rely on well water began reporting problems with their water quality. Those included black stains and sediment in their toilet cisterns; water from their wells emanating foul odors, appearing discolored, and having an oily texture; skin lesions and rashes appearing after using the water; and sick and dying animals and plants. Many residents filed complaints with DEP.

In August 2023, EQT held a townhall meeting to address the residents' concerns. At that meeting, EQT offered to deliver water storage tanks known as 'water buffalos' to residents. Twenty-nine residents, including one of the named plaintiffs, requested the water service. EQT then delivered water buffalos and refilled them on a weekly basis.

On November 29, 2023, EQT reached an agreement with DEP that allowed EQT to resume operations of the Lumber 13H Well with continued monitoring. EQT then gave notice to the 29 residents that it would stop water delivery on July 1, 2024, unless they

3

released any potential claims that they had against EQT and signed non-disclosure agreements.[1]

On June 20, 2024, before that expiration date, and about two years after the alleged frac-out, three people who resided near the Lumber 13H Well and who used well water initiated this suit in the District Court as a putative class action on behalf of other nearby residents. They sued five entities: EQT Corporation and one of its affiliated companies (both are which are alleged to be citizens of Pennsylvania), as well as three other companies (alleged to be citizens of states other than Pennsylvania but which the plaintiffs allege, on information and belief only, to be either agents of EQT or partners or coventurers with EQT). As later amended, their complaint brought eight counts – one for violations of the Pennsylvania Hazardous Sites Cleanup Act, *see* 35 Pa. Stat. §§ 6020.101–6020.1305, and seven under Pennsylvania tort law. Although, before the suit was filed, EQT had indicated that it would stop providing the water buffalos on July 1, 2024, nothing in the record indicates that it has ceased water delivery.

About two months after filing suit, the plaintiffs moved for a preliminary injunction to compel EQT and one of its corporate affiliates to provide all affected residents with, among other things, access to clean drinking water. Their briefing included affidavits from one named plaintiff and sixteen putative class members. They all articulated health concerns associated with contaminated well water, and two of them alleged that they would not be able to afford a replacement water supply if EQT ceased to refill the water buffalos. In connection with their motion, the plaintiffs requested an evidentiary hearing. But after assuming without deciding that the plaintiffs were likely to succeed on the merits, the District Court did not hold a hearing, determined that the plaintiffs had not established

___

[1] Alternatively, EQT offered to provide water treatment systems to residents who signed the release and the non-disclosure agreement.

irreparable harm, and denied their motion for a preliminary injunction. *See Hice*, 2025 WL 2457219, at \*2–3. The named plaintiffs then initiated this interlocutory appeal to challenge that ruling. *See* 28 U.S.C. § 1292(a)(1) (granting jurisdiction over interlocutory orders of the district courts, including those "refusing . . . injunctions").

## DISCUSSION

Federal courts are courts of limited jurisdiction, and the party invoking the subject-matter jurisdiction of a federal court bears the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (citations omitted)). If a pleading does not at least facially allege subject-matter jurisdiction, then the plaintiff has not met that burden. *See Smith v. McCullough*, 270 U.S. 456, 459 (1926) ("The established rule is that a plaintiff, suing in a federal court, must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction . . . ."). And federal courts may *sua sponte* assess their own subject-matter jurisdiction. *See Riley v. Bondi*, 606 U.S. 259, 273 (2025) ("[E]ven if the parties fail to spot a jurisdictional issue or agree that the court has jurisdiction, the court cannot proceed unless it makes an independent determination that it has jurisdiction."). While an opportunity to cure a jurisdictional deficiency may be permitted, *see* 28 U.S.C. § 1653, a court cannot issue preliminary injunctive relief absent, at a minimum, a prior facial showing of jurisdiction. *See Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause."); *see also Munaf v. Geren*, 553 U.S. 674, 691 (2008) ("Review of a preliminary injunction 'is not confined to the act of granting the injunctio[n], but extends as well to determining whether there is any

5

insuperable objection, in point of jurisdiction or merits . . . .'" (alteration in original) (quoting *City & County of Denver v. N.Y. Tr. Co.*, 229 U.S. 123, 136 (1913))).

Here, the plaintiffs' basis for subject-matter jurisdiction was the Class Action Fairness Act, commonly referred to as 'CAFA.' To establish jurisdiction under CAFA, the amount in controversy must be over five million dollars, *see* 28 U.S.C. § 1332(d)(2), the proposed class of plaintiffs must have at least 100 members, *see id.* § 1332(d)(5)(B), and there must be minimal diversity of citizenship among the parties, meaning that at least one plaintiff must be a citizen of a different state than at least one defendant, *see id.* § 1332(d)(2)(A). *See Vodenichar v. Halcon Energy Props., Inc.*, 733 F.3d 497, 503 (3d Cir. 2013).

Although alleging minimal diversity is not onerous – it can be established by identifying the citizenship of as few as one plaintiff and one defendant if they are diverse – plaintiffs have not made such a facial showing. The operative complaint identifies the named plaintiffs as *residents* of Pennsylvania, contains allegations regarding the *citizenship* of all defendants, and states that "at least one member of the proposed Class is a *citizen* of a different state from one of the Defendants." Am. Compl. ¶ 17 (JA829) (emphasis added). But it has long been established that, at least for purposes of diversity jurisdiction, citizenship and residency are not synonymous. *See Robertson v. Cease*, 97 U.S. 646, 648 (1878) ("Citizenship and residence, as often declared by this court, are not synonymous terms."); *Hargett v. RevClaims, LLC*, 854 F.3d 962, 965 (8th Cir. 2017) ("[T]he term 'citizen' in 28 U.S.C. § 1332 has long meant something different from 'resident.'"); *see also MidCap Media Fin., LLC v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019) (explaining that the distinction between citizenship and residency is not "empty formalism"). A person can be a resident of multiple states but a citizen of only

6

one.  *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006) ("An individual who resides in more than one State is regarded, for purposes of federal subject-matter (diversity) jurisdiction, as a citizen of but one State.").  And state citizenship depends on a natural person's United States citizenship and his domicile, *viz.*, "his true, fixed and permanent home and place of habitation."  *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) (quoting *Vlandis v. Kline*, 412 U.S. 441, 454 (1973)); *see also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) ("[T]o be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States and be domiciled within the State.").  So without allegations in either the pleadings or the motion papers sufficient to demonstrate the *citizenship* of at least one diverse plaintiff, the remaining statements – those as to the defendants' citizenship and a conclusory allegation of minimal diversity – do not suffice for a facial showing of minimal diversity, which is required before a preliminary injunction may be issued in a CAFA case.  *See* 28 U.S.C. § 1332(d)(2)(A) (requiring diversity of "citizenship"); *cf. Krasnov v. Dinan*, 465 F.2d 1298, 1300 (3d Cir. 1972) ("[M]ere residency in a state is insufficient for purposes of diversity.").[2]  Accordingly, without a facial showing of jurisdiction, it was not error for the District Court to deny the motion for a preliminary injunction.

---

[2] *See also Rosenwald v. Kimberly-Clark Corp.*, 152 F.4th 1167, 1174–75 (9th Cir. 2025) (concluding that there was not a showing of minimal diversity because the citizenship of the defendant was not alleged in the complaint and rejecting the contention that citizenship can be judicially noticed); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) (holding that there was not a showing of minimal diversity when the complaint alleged that a defendant LLC was "a citizen of a different state" without specifying which state); *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019) (rejecting an inference of minimal diversity based on the claim that "some 'undetermined number' of class members are 'non-Illinois and non-Delaware citizens'").  *But see Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006) (concluding that a showing of minimal diversity had been made based on a "reasonable probability" from allegations as to residency of the named plaintiff and thousands of "New York customers" even in the absence of allegation of any plaintiff's citizenship).

## CONCLUSION

For these reasons, we will vacate the order of the District Court denying the motion for a preliminary injunction.[3]

---

[3] Judge Phipps agrees with the opinion except its proposed disposition; he would affirm the denial of the preliminary injunction instead of vacating it.